# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **DANYELLE TILLMAN** | § | **PLAINTIFF** |
| | § | |
| v. | § | Civil Action No. 1:09CV630-LG-RHW |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY, MICHAEL J. ASTRUE** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER REJECTING
## PROPOSED FINDINGS OF FACT AND RECOMMENDATION

**BEFORE THE COURT** is the Proposed Findings of Fact and Recommendation [18] entered by United States Magistrate Judge Robert H. Walker on August 13, 2010. Judge Walker recommends that this Court deny Danyelle Tillman's Motion to Reverse or Remand [11] and affirm the final decision of the Commissioner of Social Security denying Danyelle Tillman's claim for Social Security disability benefits. Tillman has filed an objection to the Recommendation, and the Commissioner has filed a response in support of the Recommendation. After a thorough review of the administrative record, the pleadings submitted by the parties, and the applicable law, the Court finds that substantial evidence did not support the findings of the Administrative Law Judge and that the Administrative Law Judge failed to properly consider the cumulative effect of Tillman's medical conditions when determining whether she was capable of participating in substantial gainful work. As a result, the Court rejects the Proposed Findings of Fact and Recommendation and remands for an evidentiary hearing concerning the cumulative effect of Tillman's medical conditions.

## FACTS

Danyelle Tillman, who is currently thirty-six years old, filed an application for

Social Security disability benefits and SSI in 2006. She primarily alleges that she suffers from complex partial seizures and migraine headaches. However, heart problems, mild left ulnar neuropathy, insomnia, dizzy spells, anxiety, and depression are also mentioned in the administrative record. At her hearing, she testified that she suffers seizures at least two times a month, and it takes her all day to recover from each seizure. (Admin. Rec. at 33-34). The seizures last approximately five to ten seconds and cause her to become unresponsive, exhausted, and confused. (*Id.* at 38-39, 141). She also stated that she suffers from daily migraine headaches that cause vomiting, diarrhea, vision problems, and sensitivity to light and sound. (*Id.* at 34). The effects of the migraines require her to stay in bed all day in a dark room with a mask over her eyes. (*Id.*) She also believes that her medications cause insomnia, vomiting, diarrhea, and memory problems. (*Id.*) She testified that her seizures have improved over time, but the migraine headaches "are taking over." (*Id.* at 40). The cause of the seizures is not known, but Tillman testified that the migraines are triggered by light and sound. (*Id.* at 38, 40).

She testified that she lives with her mother and is supported by her mother's income. (*Id.* at 33). While her mother is at work, an uncle stays in the house to watch over her. (*Id.* at 37). She claims she is not able to drive, cook, or do any laundry or other housework. (*Id.* at 36). She also does not do anything for fun, and she does not have an appetite. (*Id.* at 36, 39). She stated at her hearing that she does not watch television because of light sensitivity. (*Id.* at 36). Someone must check in on her while she is bathing in case she has a seizure. (*Id.* at 35). She has stopped going to church

because of her condition. (*Id.* at 37).

In September of 2006, she and her mother completed questionnaires concerning her activities and limitations. Tillman then stated that she tries, with the assistance of her mother, to get her son ready for school and to make sure that he eats and does his homework. (*Id.* at 170). She said she sometimes shops for personal needs and sometimes visits her grandmother's house until her mother gets home. (*Id.* at 172-73). She and her mother stated that she can pay bills, manage a savings account and checkbook, and count change, but they both noted that she sometimes has difficulty with these tasks due to memory loss caused by her seizures and that other people must help her. (*Id.* at 173, 212).

Her work history includes serving as a sales clerk at a clothing store and working at Wal-mart as a cashier. (*Id.* at 176). She has not worked since December of 2000. (*Id.* at 33). Most of the diagnostic testing that she has undergone produced normal results, but some of the EEGs that she has undergone were abnormal and indicated the presence of seizures. In addition, a nerve conduction study revealed that she has mild left ulnar neuropathy.

At her administrative hearing, the administrative law judge asked a vocational expert whether an individual that was required to avoid more than occasional exposure to hazardous conditions including unprotected heights, ladders, scaffolds, and dangerous moving machinery as well as flashing lights and loud noises could perform the requirements of any of Tillman's past work. (*Id.* at 42-43). He testified that such an individual could work as a daytime cashier, an information clerk, or a teacher's aide.

(*Id.* at 44).  However, he testified that if she was required to miss at least two or more days each month, she would be terminated after the first month.  (*Id.* at 45).

## DISCUSSION

The standard of review for social security disability cases is limited to a determination of "(1) whether the Commissioner applied the proper legal standard[,] and (2) whether the Commissioner's decision is supported by substantial evidence." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).  A court reviewing the Commissioner's decision is not permitted to "re-weigh the evidence but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The court is not permitted to substitute its judgment for that of the Commissioner.  *Villa*, 895 F.2d at 1022.

The Social Security Act permits persons with a physical or mental disability who have contributed to the program to receive disability insurance benefits.  42 U.S.C. § 423.  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §423(d)(2)(A).

When evaluating a disability claim, the administrative law judge conducts a five-step sequential evaluation process. 20 C.F.R. § 404.1520, 416.920. At the first step, the ALJ considers whether the claimant is currently working and whether that work constitutes substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ considers whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the ALJ determines whether the impairment meets or equals an impairment listed in appendix one of the social security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the ALJ examines whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Finally, the ALJ considers whether the impairment prevents the claimant from doing any other substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ finds that the claimant is either disabled or not disabled at any step, the inquiry ends and the ALJ makes his or her determination at that time. 20 C.F.R. § 404.1520(a)(4). Before the ALJ moves to the fourth step, the claimant's residual functional capacity, which is defined as "the most [the claimant] can still do despite [her] limitations," is assessed, and the residual functional capacity is considered when evaluating steps four and five. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R.

§ 404.1545(a)(1). The ALJ is required to consider all of the claimant's medically determinable impairments, including those that are not determined to be "severe." 20 C.F.R. § 404.1545(a)(2).

In the present case, the ALJ determined at step one that Tillman has not engaged in substantial gainful employment since November 1, 2004. As for step two, she determined that Tillman's partial complex seizures constitute a severe impairment, but her other impairments, including the migraine headaches, are not severe. The ALJ found that the migraines were not severe, because in September of 2006, Tillman's doctor noted that the headaches had decreased in frequency, were mild in nature, and were not functionally limiting.

At step three of the analysis, she determined that Tillman does not have an impairment or combination of impairments that meet or medically equal the listed impairments of appendix 1, because, among other things, the seizures do not occur with sufficient frequency and do not involve loss of consciousness. At step four of the analysis she concluded that Tillman is not disabled within the meaning of the Act because she is capable of performing her past relevant work as a cashier. Although she was not required to proceed to step five of the analysis, she determined that Tillman is also capable of performing work as an information clerk or a teacher's aide. The ALJ determined that Tillman "has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She should avoid driving and exposure to unprotected heights, loud noises and flashing lights." (Admin. Rec. at 22).

While determining Tillman's residual functional capacity, the ALJ held that Tillman's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Tillman's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. She then determined that Tillman can perform "essentially a full range of simple routine work" based on the following: (1) Tillman's July 2005 EEG was within normal limits; (2) her neurologist's records show that her seizures had improved; (3) in March 2007, she was noted to being doing well overall and her seizures had decreased in frequency; (4) CT-scans performed on her brain in June and August of 2007 were normal; (5) an MRI of her brain and a neurological exam were normal in September of 2007; (6) she had not filled one of her medications due to insurance problems; (7) her medication helped her sleep; and (8) in September of 2006, Tillman and her mother reported that she was able to pay bills, handle a savings account, count change, and use a checkbook. (Admin. Rec. at 23).

The ALJ also rejected Tillman's primary physician's statements. It appears that she rejected his statements concerning the frequency of the seizures because they conflicted with Tillman's statements. Specifically, in November 2, 2007, he stated that Tillman suffered seizures more than once a week, and on September 24, 2008, he stated that he would give about the same estimate. Meanwhile, a few days later Tillman stated that her seizures had improved and occurred at least twice a month. The ALJ rejected his statements concerning the frequency, effects, and duration of the migraines, because they were "not well supported by medically acceptable clinical and laboratory

techniques and is not consistent with other substantial evidence of record as set for [sic] in 20 C.F.R. 404.1529(d)(2) and 416.929(d)(2)," but she did not elaborate on the basis for this determination. (Admin. Rec. at 23).

The ALJ also determined that Tillman's limitations appear to be "self-imposed" because no doctor has directed her to restrict her activities. She noted that, in September of 2006, Tillman and her mother stated that Tillman watched television, got her child ready for school, shopped, sometimes went to church, sometimes helped her child with his homework, and visited her grandmother. The ALJ held that these activities "are consistent with an ability to perform work at all exertional levels with seizure precautions." (Admin. Rec. at 23).

In her objections to the Proposed Findings of Fact and Recommendations, Tillman first argues that her migraine headaches were not properly considered, because the hypothetical question concerning flashing lights and loud noises posed to the vocational expert did not adequately address the effects of the headaches. She also argues that the ALJ improperly selected one medical record demonstrating improvements with regard to the treatment of the migraines, while disregarding numerous other references to the migraines both before and after that medical record. She argues that she has migraines at least once a week that would each cause her to miss at least half a day of work due to the nausea, diarrhea, vomiting, and sensitivity to light and sound. Tillman emphasizes that the vocational expert opined that an employee would be terminated if she missed two or more days every month.

Tillman further argues that the hypothetical was inaccurate because it contained

references to flashing lights and loud noises, while Tillman stated that it is not known what causes the seizures and that light and noise in general trigger migraines. In addition, once a migraine is triggered, she alleges that she becomes so sensitive to light and sound that she must lie down in a dark room and wear an eye mask. Thus, she asserts that the "treatment" for her migraines prevents her from engaging in substantial gainful employment.

Tillman also claims that the ALJ did not adequately explain her failure to consider Tillman's physician's statements or her decision that Tillman's statements were not credible. Furthermore, she asserts that there is not sufficient evidence to support the decision to reject the statements of Tillman and her physician or to support the decision that Tillman is capable of engaging in substantial gainful employment.

An "ALJ must consider all record evidence and cannot 'pick and choose' only the evidence that supports [her] position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Furthermore, the ALJ must consider the combined effects of all impairments, including the interaction and cumulation of all of the claimant's medical problems. *Scott v. Heckler*, 770 F.2d 482, 487 (5th Cir. 1985). A court cannot say that a decision was supported by substantial evidence where the ALJ fails to consider the combined effect of impairments. *Wingo v. Bowen*, 852 F.2d 827, 830-31 (5th Cir. 1988). The ALJ must consider the claimant's subjective symptoms as well as the objective medical evidence. *Wingo*, 852 F.2d at 830.

The ALJ in the present case did discuss Tillman's various medical complaints, focusing primarily on the migraines and the seizures, but she never considered or

-9-

discussed the combined effect of these impairments. This is demonstrated by the determined residual functional capacity and the hypothetical posed to the vocational expert. The effects of the migraines were not considered in the residual functional capacity and hypothetical question. There was no mention of the persistent vomiting, nausea, sensitivity to all light and sound, and diarrhea. Furthermore, the frequency of the migraines was never considered in combination with the frequency of the seizures. For instance, even if the statements of Tillman's physician concerning weekly seizures are disbelieved, there is no evidence to dispute Tillman's more conservative estimate that she has at least two seizures per month. Furthermore, there is no evidence that refutes Tillman's claim that she has suffered from frequent migraine headaches for over four years. The vocational expert opined that missing only two days per month would result in termination. Although the ALJ may disbelieve the expert's opinion on this matter, there must be substantial evidence to support her decision.

Finally, the basis for discrediting both Tillman and her physician is not very clear from the opinion, and it appears that the ALJ may have impermissibly picked out a few medical records noting improvement, while ignoring other medical records that supported the statements of Tillman and her physician. Furthermore, the ALJ relied on incomplete descriptions of statements made in September of 2006 by Tillman and her mother. For example, the ALJ noted that Tillman and her mother said that she could handle a savings account, count change, and manage a checkbook, but failed to point out that both Tillman and her mother noted that, at times, she had difficulty with these tasks due to memory problems and confusion caused by the seizures. This is

particularly of concern due to the fact that the ALJ determined that Tillman could perform her past work as a cashier.

For all of these reasons, the Court rejects the recommendation of the Magistrate Judge and finds that Tillman's Motion to Remand should be granted. This Court instructs the ALJ to consider the combination of Tillman's impairments in order to determine whether they interact to prevent Tillman from engaging in substantial gainful activity. Furthermore, the ALJ is instructed to carefully consider and analyze the factors set forth at 20 C.F.R. § 404.1527(d) when deciding whether to discredit the opinions of Tillman's treating physician, and to clearly set forth the basis for discrediting the statements of the claimant and her physician after conducting a full review of the record.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Proposed Findings of Fact and Recommendation [18] entered by United States Magistrate Judge Robert H. Walker on August 13, 2010, is **REJECTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Danyelle Tillman's Motion to Remand [ 11] is **GRANTED**. This case is **REMANDED** for additional proceedings in accordance with this opinion.

**SO ORDERED AND ADJUDGED** this the 27th day of September, 2010.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE